IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ATLAS IP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> EKAHAU, INC. and AIRISTA, LLC <br><br> Defendants. | Civil Action No.: _____ <br><br> **DEMAND FOR JURY TRIAL** |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Atlas IP, LLC ("Atlas") brings this action and makes the following allegations of patent infringement relating to U.S. Patent No. 5,371,734 ("the '731 Patent") against Defendants Ekahau, Inc. ("Ekahau") and AiRISTA, LLC ("AiRISTA") as follows:

### NATURE OF ACTION

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

### THE PARTIES

2. Atlas IP, LLC is a limited liability company organized and existing under the laws of the State of Florida, having a principal place of business at One SE Third Avenue, Suite 200, Miami, Florida 33131.

3. Defendant Ekahau is a Delaware corporation with a place of business at 1851 Alexander Bell Drive, Suite 105, Reston, Virginia 20191. Ekahau may be served through its resident agent for service of process in Virginia: Corporation Service Company, Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, VA 23219.

4.  Defendant AiRISTA, LLC is a Maryland limited liability company with a place of business at 913 Ridgebrook Road, Suite 110, Sparks Glencoe, Maryland 21152. AiRISTA can be served through its resident agent for service of process in Maryland: Masoud Sajjad, 406 Buedel Court, Sparks, MD 21152.

5.  In March 2016, AiRISTA Flow, a Real Time Location System (RTLS) technology division of AiRISTA, purchased Ekahau's RTLS U.S. and International divisions. AiRISTA, now operates the Ekahau RTLS business. Ekahau and AiRISTA are collectively referred to as "Defendant."

## JURISDICTION AND VENUE

6.  This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a)

7.  Upon information and belief, this Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within the Eastern District of Texas giving rise to this action and has established sufficient minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Personal jurisdiction also exists specifically over Defendant because it, directly or through subsidiaries or intermediaries, makes, uses, offers for sale, sells, imports, advertises, makes available and/or markets one or more products and/or services within the State of Texas, and more particularly, within the Eastern District of Texas, that infringe the patent-in-suit, as described more particularly below.

8.  Venue is proper in the Eastern District of Texas pursuant to 28 U.S.C. §1391(b) and (c) and §1400(b) insofar as Defendant has, among other things, committed acts of patent infringement in this District.

## BACKGROUND

9.  Atlas is the owner by assignment of U.S. Patent Nos. 5,371,734 ("the '734 patent") entitled, *Medium Access Control Protocol for Wireless Network*, the application for which was filed in January 1993. (Exhibit A)

10. The invention of the '734 patent is directed, *inter alia*, to "a reliable medium access control (MAC) protocol for wireless, preferably radio frequency (RF), LAN-type network communications among a plurality of resources…." '734 patent, col. 5, lines 10-14.

11. Representative claim 1 of the '734 patent reads:

A communicator for wirelessly transmitting frames to and receiving frames from at least one additional communicator in accordance with a predetermined medium access control protocol, the communicators which transmit and receive the frames constituting a Group, each communicator including a transmitter and a receiver for transmitting and receiving the frames respectively, the medium access control protocol controlling each communicator of the Group to effect predetermined functions comprising:

designating one of the communicators of the Group as a hub and the remaining the communicators of the Group as remotes;

the hub establishing repeating communication cycles, each communication cycle having intervals during which the hub and the remotes transmit and receive frames;

the hub transmitting cycle establishing information to the remotes to establish the communication cycle and a plurality of predeterminable intervals during each communication cycle, the intervals being ones when the hub is allowed to transmit frames to the remotes, when the remotes are allowed to transmit frames to the hub, and when each remote is expected to receive a frame from the hub;

the hub transmitting a frame containing the cycle establishing information which establishes both an outbound portion of the communication cycle when the hub transmits frames to the remotes and an inbound portion of the communication

cycle when the remotes transmit frames to the hub, the frame containing the cycle establishing information also establishing the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive;

the remotes powering off their transmitters during times other than those intervals when the remote is allowed to transmit frames to the hub, by using the cycle establishing information transmitted from the hub; and

the remotes powering off their receivers during times other than those intervals when the remote is expected to receive a frame from the hub, by using the cycle establishing information transmitted from the hub.

12. Defendant infringes the '734 through, for example, its use of Ekahau ERC and Ekahau Vision, NIC 300 and tags, badges and sensors.

13. Prior to January 2013, Defendant installed among its customer base Ekahau RTLS solutions network of ERCs, and tags, badges and sensors. Such tags, badges and sensors B4 tags including the B4 Staff Badge, Ekahau W4 Wristband, T1 and T2 sensors, T301 and A4 Tags, communicate with access points controlled by ERCs and Vision software to create a wide area network ("WAN").

14. The communication between the tags, badges and sensors and the access point controlled by the ERCs over the WAN occurs over the unlicensed 2.4 -2.48 GHz band.

15. The ERC controlled access points and badges, sensors and tags (hereinafter nodes) communicate over the WAN ("Accused Products") and are designed to form a communication group.

16. The Accused Products each include a transceiver consisting of a transmitter and receiver that transmits and receives packets of data.

17. The Accused Products operate to transmit and receive information about tag location, data, such as temperature or status, or messages.

18. The Accused Products form a group of at least one device operating in remote mode (node), and one device operating in base mode (access points sending ERC data, for example). For example, when using a B4 tag, the tag is programmed to wake up at periodic intervals and listen. It will request a maintenance update from the ERC to find any messages or maintenance updates are for the tag. Thereupon, the ERC will initiate a communication session with the tag,

19. The ERC sends at least one frame of data to a node that initiates a communication cycle, and which allows the node to calculate the duration of the communication cycle and its constituent intervals before the tag transmits to the ERC during the communication cycle.

20. During the communication session, the ERC and the tag will transmit and receive packets of data to and from one another based on queries or messages from the ERC to the tag. The messages, maintenance updates or firmware updates from the ERC to the node, and machine state data and confirmations from the node to the ERC.

21. During the transmission period, the node expects to receive a packet of data, which come in the form of a query or message. During the reception period, the node sends packets of data to the ERC including message confirmations and machine state data.

22. The ERC establishes communication sessions with the nodes that repeats (*e.g.,* every 60 seconds). During each such communication session there is at least one communication cycle, during which there are intervals during which the node and the ERC transmit and receive frames. For example, as depicted in Figure 3 of the '734 patent below, the maintenance update request is sent to the ERC before the communication cycle begins. The ERC sends frames to the node with maintenance updates or messages. These frames contain information establishing the communication cycle, including the interval in which a maintenance update is required or a data

read request is sent from the ERC to the node (i.e., the outbound portion of the communication cycle), and the interval in which a confirmation or device state message is sent from the node to the ERC (i.e., the inbound portion of the communication cycle).



23.     The ERC access point determines whether to power off its receiver during times other than those when it is receiving data during a communication session. Likewise, the tags determine whether to power off its transmitter during times other than those when it is transmitting data during a communication session. For example, the tag can communicate with the access point using half-duplex radio frequency communications. In half-duplex communications, the tag powers down the receiver circuitry of the radio transceiver during the interval of the communication cycle in which it is transmitting the device state or confirmation message. Once the tag has transmitted data packets to the ERC, if its receiver has been powered down, it activates its receiver to await the reception of data from the base. Alternatively, if the

communication session has ended the tag shuts off both the receiver and transmitter until the next periodic wake-up.

24. A chart showing that the Accused Products literally satisfy each limitation of claim 1 of the '734 patent is attached hereto as Exhibit B.

### Count I – Infringement of the '734 Patent

25. Atlas hereby incorporates by reference paragraphs 1-24.

26. Defendant's ERC and tags described herein directly infringed the claims of the '734 patent before the expiration thereof, including but not limited to, representative claim 1 above and claims 2, 3, 4, 5, 12, 13, 15, 16, 17, 18, 32, 34, and 44.

27. Defendant is liable for infringement of one or more claims of the '734 patent pursuant to 35 U.S.C. § 271, either literally or under the Doctrine of Equivalents.

28. As a result of Defendant's wrongful conduct, Atlas has been damaged in an amount to be determined at trial, but in no case less than a reasonable royalty.

29. Atlas has not made or sold, or had made or sold for it, any product covered by the claims of the '734. Of Atlas's predecessors in interest in the ownership of the '734 patent, only Digital Ocean Inc. made or sold, or had made or sold, products covered by the claims of the '734 patent. Digital Ocean marked all such products with the '734 patent number.

### REQUEST FOR JURY TRIAL

30. Atlas requests a jury trial on all issues for which a jury trial is permissible.

### PRAYER

WHEREFORE, Atlas respectfully requests that this Court enter the following prayer for relief:

A. A judgment in favor of Plaintiff Atlas IP, that Defendant has infringed, either literally

and/or under the doctrine of equivalents, the '734 patent;

B. An award of damages resulting from Defendant's acts of infringement in accordance with 35 U.S.C. § 284;

C. A judgment and order requiring Defendant to provide accountings and to pay supplemental damages to Atlas including, without limitation, prejudgment and post-judgment interest; and

D. Any and all other relief to which Atlas may show itself to be entitled.

Dated: October 18, 2016.                     Respectfully submitted,

  _/s/ Deron R. Dacus_____
Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
Shannon Dacus
Texas Bar No. 00791004
sdacus@dacusfirm.com
Peter A. Kerr
Texas Bar No. 24076478
pkerr@dacusfirm.com
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX  75701
(903) 705-1117 Telephone
(903) 581-2543 Facsimile

*Attorneys for Plaintiff Atlas IP, LLC*